IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIDDELL LACY, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:21-cv-3081 |
| | ) |
| v. | ) Judge Robert M. Dow, Jr. |
| | ) |
| VILLAGE OF MAYWOOD, | ) |
| MAYWOOD POLICE OFFICER SEAN | ) |
| EARLY, MAYWOOD POLICE | ) |
| OFFICER CARLOS PATTERSON, and | ) |
| MAYWOOD POLICE OFFICER JOHN | ) |
| DOE, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Liddell Lacy brings this action under 42 U.S.C. § 1983 against the Village of Maywood and Maywood Police Officers Sean Early, Carlos Patterson, and an unknown John Doe alleging violations of his federal constitutional rights. Lacy also brings a state-law claim for fraudulent concealment against Defendant John Doe for his alleged role in thwarting Lacy from naming him in this suit.

Now before the Court is Defendants' motion to dismiss in part [16] Lacy's amended complaint [14] ("Complaint"). Defendants seek to dismiss (1) Count IV of the Complaint, and (2) Defendant Officer John Doe from the Complaint in its entirety. In addition to opposing Defendants' motion to dismiss [18], Lacy asks the Court to grant him leave to file a second amended complaint in order to substitute Lt. Daryl Fairley for the unnamed John Doe.

For the reasons explained below, the Court denies Defendants' motion to dismiss [16] in full and grants Plaintiff's request for leave to file an amended complaint to substitute Lt. Fairley. Plaintiff is directed to file the amended complaint no later than September 26, 2022. The parties

are directed to file a joint status report no later than October 12, 2022, setting out (a) a deadline by which Defendants will respond to the amended complaint; (b) a proposed discovery plan, and (c) a statement in regard to any settlement discussions and/or interest in a referral to the Magistrate Judge for a settlement conference.

I.      Background[1]

    A.      Factual Background

Plaintiff Liddell Lacy brings this action based on his detention by the Maywood Police Department from June 8, 2019, through June 14, 2019. According to the Complaint [14], on the morning of June 8, 2019, Lacy was transported to a holding cell at the Maywood Police Department headquarters. [*Id.* at ¶ 19.] Lacy takes issue with the conduct of three police officers during his detention. He identifies two of those officers in the complaint—Defendants Officers Sean Earley and Carlos Patterson—and refers to the third officer as "John Doe." [*Id.* at ¶¶ 7–9]. All three officers are alleged to be employees of the Village of Maywood. [*Id.*]

Lacy specifically alleges that upon being detained, he tied a blanket to the top of the toilet cell in his stall to demonstrate the hanging risk created it posed. [14 (Compl.) at ¶ 20.] Upon observing the blanket, Officer Earley ordered Lacy to stand and place his hands behind his back to be handcuffed. [*Id.* at ¶¶ 21–22.] Once the handcuffs were placed, Lacy complained they "were too tightly applied and that he suffered from a disability, resulting from injuries to his neck and shoulder." [*Id.* at ¶ 24.] Officer Earley then "became even more aggressive, pushing [Lacy] towards the entry to the cell, and jerking and lifting Plaintiff's handcuffed wrists causing severe pain" to his shoulder. [*Id.* at ¶ 25.] Lacy requested evaluation by a physician and transport to a

---

[1] For purposes of Defendant's motion to dismiss, the Court accepts as true all well-pled allegations set forth in the amended complaint [14] and draws all reasonable inference in Plaintiffs' favor. *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

hospital psychiatric ward, "as he had been counseled by his treating psychiatrist to admit himself in the event he feels totally overwhelmed." [*Id*. at ¶ 27.] He was transferred to Westlake Hospital, where he stayed for several days. [*Id*. at ¶¶ 28–29.]

On June 13, 2019, Lacy was released from Westlake Hospital. [14 (Compl.) at ¶ 29.] Upon his return to the Maywood Police Department headquarters, Lacy began having problems with his vision. He alleges that he informed Officer John Doe that he was "in trouble" and needed to return to the hospital. [*Id*. at ¶¶ 30–31.] Officer John Doe denied Lacy's request and said Lacy was "playing games." [*Id*. at ¶ 32.] Lacy's request, and Officer John Doe's denial, repeated two or three times before Officer John Doe called EMTs, to whom Officer Doe expressed his belief that Plaintiff was "not being truthful in his please for help." [*Id*. at ¶¶ 33–34.]. Eventually, John Doe called emergency medical technicians, who returned him to Westlake Hospital. [*Id*. at ¶ 35.]

Lacy further alleges that a consulting crisis worker at Westlake Hospital instructed Officer Patterson to transfer Lacy to the psychiatric ward at Cermak Health Services of Cook County. [14 (Compl.) at ¶ 36]. Despite these instructions, Officer Patterson refused. [*Id.* at ¶ 37.] He then returned Lacy to the Maywood Police Department. [*Id*.]. Lacy was detained overnight and released the next morning after his initial Court appearance. [*Id*. at ¶¶ 38–39.]

Also relevant in hindsight, Lacy alleges that following his release, he returned to the Maywood Police Department to retrieve his belongings. [14 (Compl.) at ¶ 40.] He spoke with Officer John Doe and "requested that Officer John Doe identify all Maywood Police Department officers whom [Lacy] had encountered from June 8, 2019, through June 14, 2019. [*Id*. at ¶ 41.] Lacy further states that "[i]n response to [Lacy's] request, Officer John Doe provided a hand-written list of officer names. [*Id.* at ¶ 42.] Critical to this motion, that list omitted Doe's own identity. [*Id*. at ¶ 42.]

3

### B. Procedural Posture

On June 8, 2021, Plaintiff initiated this action *pro se* [1], naming Officers Sean Earley, Carlos Patterson, and John Doe. On December 23, 2021, after retaining counsel, Lacy amended his pleadings. The now operative Amended Complaint ("Complaint") alleges that Officers Earley, Patterson, and John Doe violated Lacy's constitutional rights under 42 U.S.C. § 1983 (Counts I and II) and seeks indemnification from Defendant Village of Maywood (Count III). Lacy further brings a state-law claim for fraudulent concealment (Count IV) against unknown Officer John Doe.

Defendants then moved to dismiss [16] in part Lacy's Complaint [14] under Federal Rule of Civil Procedure 12(b)(6).[2] In their motion, Defendants ask this Court to dismiss the fraudulent concealment claim against Officer John Doe (Count IV) and to dismiss John Doe from the Complaint entirely.

## II. Legal Standard

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v.*

---

[2] Although the Defendants do not explicitly state they are moving under Federal Rule of Civil Procedure Rule 12(b)(6), the Court will treat Defendants' motion as such. As Lacy points out, [18 at 1 n.1,] Defendants not only use the rule in substance, but also in form, as they invoke the legal standard for a Rule 12(b)(6) motion, see [16 at 3.] The Court does not require any precise incantation to warrant relief on an otherwise proper motion.

*Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at *2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

Under Illinois law, a Plaintiff bringing a §1983 claim must file suit within two years of the alleged cause of action. *Brooks*, 578 F.3d at 578. Additionally, under the Illinois Tort Immunity Act, any civil state law claim against a local entity or its employees must be brought within one year of the cause of action. *Davenport v. Dovgin*, 545 F.App'x. 535, 538 (7th Cir. 2013); *Tabet v. Mill Run Tours, Inc.*, 2013 WL 1103695, at *3 (N.D. Ill. March 15, 2013). A statute of limitations is an affirmative defense normally considered after the pleading stage and "complaints need not anticipate defenses and attempt to defeat them." *Tabet*, 2013 WL 1103695, at *2 (quoting *Richards v. Mitcheff*, 969 F.3d 635, 637 (7th Cir. 2012)). That said, it is well-established that statutes of limitations may be addressed in a motion to dismiss if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

**III.     Analysis**

Defendants argue in their motion [16] that Lacy's Complaint fails to state a claim under state law for fraudulent concealment. Defendants also move to dismiss Officer John Doe entirely, arguing that Plaintiff's §1983 and fraudulent concealment claims against that defendant are outside

5

the two-year §1983 statute of limitations and the Illinois Tort Immunity Act's one-year statute of limitations for supplemental state law claims [16.]

Neither argument is persuasive, as Lacy has plausibly alleged a fraudulent concealment claim and it is premature to conclude that Lacy's claims have expired as a matter of law.

### A. Fraudulent Concealment – Count IV

First up is Defendants' argument that Lacy fails to state a claim for fraudulent concealment, which turns on John Doe's omission of his own name from the list of officers he handed Lacy upon Lacy's request. See [14 (Compl.) at ¶¶ 61–64.] Defendants assert that Count IV of the Complaint should be dismissed with prejudice because Lacy fails to properly plead a cause of action or, in the alternative, because Count IV is barred by the Illinois Tort Immunity Act's one-year statute of limitations. [16 (Defs. MTD) at 4–8.][3]

Under Illinois common law, fraudulent concealment is an independent cause of action, whereby a "defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (1996). Rule 9(b)'s heightened pleading requirement applies to claims of fraudulent concealment, such that Plaintiff must "state

---

[3] Defendants also argue that to the extent Plaintiff is asserting fraudulent concealment under 735 ILCS 5/13-215, the fraudulent concealment statute does not equitably toll Plaintiff's section 1983 claim against John Doe because the statute does not apply in this scenario. See [16 at 6.] ("In Illinois fraudulent concealment can either take the form of a claim in and of itself, or in the form of a type of equitable tolling. It appears herein Plaintiff is arguing for both for the purposes of allowing the allegations against Office John Doe to move forward"). Specifically, the statute does not apply to the "concealment of the cause of action-not fraudulent concealment of the identity of the tortfeasor." [16 at 6] (quoting *Smith v. Chicago Heights*, 951 F.2d 834, 837 (7th Cir. 1992)).

Despite Defendants' contention that Lacy has "ignored Defendants' case law," Lacy made clear that he is not pursuing a theory under 735 ILCS 5/13-215. See [18 at 4] ("Defendants' discussion of tolling, in the context of the fraudulent concealment claim, is of no moment"). But even if he were, the Court agrees with Defendants that that the Illinois concealment statute could not toll the cause of action because Lacy alleges that John Doe concealed his identity, not the facts related to his claim and injury. See *Smith*, 951 F.2d 834 at 4.

with particularity the circumstances constituting fraud." *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 961 (N.D. Ill. 2021) (quoting Fed. R. Civ. P. 9(b)); *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797, 805 (7th Cir. 2018).

To prove a claim of fraudulent concealment under Illinois law, Plaintiff must demonstrate the following elements:

> (1) the concealment of a material fact; (2) that the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) that the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) that the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

*Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765 (7th Cir. 2002) (citing *Schrager v. North Comm. Bank*, 328 Ill.App.3d 696, 262 Ill. Dec. 916, 767 N.E.2d 376, 384 (Ill. 2002)).

1. **Prong 2: Duty**

In their motion to dismiss [16], Defendants present two independent reasons for why they believe Lacy cannot satisfy the second and third prongs of a fraudulent concealment claim as a matter of law.[4] As for the second prong, Defendants argue that Lacy has not shown the existence of a "duty." In their words, "[t]here [are] no allegations that there was the existence of a special relationship, such as a fiduciary relationship, or confidential relationship, or otherwise." [16 (Defs. MTD) at 7.] In opposition, Lacy argues that Defendant John Doe "had a duty to disclose to

---

[4] To the extent that Defendants also challenge whether the concealment of an identity falls within the type of conduct barred by Illinois law, the Court disagrees. Unlike claims brought under 735 ILCS 5/13-215, the concealment of an identity may be the basis for common law fraud if it is a "material fact." See *Bettua v. Sears, Roebuck and Co.*, 2009 WL 230573, at *2 (N.D. Ill. Jan. 30, 2009). A fact "is 'material' if the plaintiff would have acted differently had he been aware of it, or if it concerned the type of information upon which he would be expected to rely when making his decision to act." *Id*. Lacy contends that Officer John Doe's intentional omission of his own name caused detrimental reliance. It follows that Lacy would have acted differently had he been aware of Officer John Doe's name. As such, Officer John Doe's identity qualifies as a "material fact" for purposes of the fraudulent concealment claim.

7

Plaintiff the identities of all Maywood Police Department officers whom Plaintiff encountered during the time period at issue in this case" which he maintains is "all that is required of Plaintiff at the pleading stage." [18 (Pl. Opp. Br.) at 3.] Lacy also points out that "[c]ourts have recognized a 'special relationship' between police and pretrial detainees," citing *Estate of Allen v. City of Rockford, et al.,* 349 F.3d 1015, 1020 (7th Cir. 2003), and *Estate of Allen v. City of Rockford, et al.,* 2002 WL 426117, at *4 (N.D. Ill. 2002), presumably to suggest that his status as a pretrial detainee created the special relationship for fraudulent concealment purposes.

A duty to speak arises when parties "are in a confidential or fiduciary relationship" or in a "situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Connick*, 174 Ill.2d at 500 (1996). "A party may also be subject to a statutory duty to disclose certain facts." *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 2015 IL App (2d) 140952, ¶ 30. Namely, "a duty to disclose * * * * may arise when defendant tells a half-truth and then becomes obligated to tell the full truth." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725 (7th Cir. 2017).

Lacy does not allege a fiduciary or confidential relationship with Officer John Doe. Rather, he argues that, as a matter of law, there was a "special relationship" between them because Lacy was a pre-trial detainee under Officer John Doe's care. This Court need not address whether the existence of a due process "special relationship" between police and pre-trial detainees creates a duty under Illinois fraudulent concealment claims because Lacy was not a pre-trial detainee; he had been released from custody earlier that day.

Nor does Lacy sufficiently allege a duty arising from a "special relationship." Lacy's contention that the specific circumstances of the case at least raise the possibility that a special relationship existed between the parties is not persuasive. In Illinois, "[t]he special relationship

threshold is a high one;" a defendant "must exercise overwhelming influence over the plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 572 (7th Cir. 2012). "[S]tate and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Id*. at 571. Lacy's Complaint provides no allegations to plausibly allege a special relationship with officer John Doe. While the officer possessed superior knowledge about the operations of the police department, "asymmetric information alone does not show the degree of dominance needed to establish a special trust relationship." *Id*. at 573; see *Toulon*, 877 F.3d at 738. Beyond this information gap, there are no facts which point to Officer John Doe's "overwhelming influence" over the plaintiff. As such, the defendant did not have a duty to speak on this basis alone.

Nevertheless, the Complaint plausibly alleges that John Doe had a duty to disclose his identity to Lacy. Lacy allegedly asked, and Officer John Doe provided, a partial list of the officers that Lacy encountered between June 8 through 14, 2019. Lacy states that Doe "did not identify himself." [14 (Compl.) at ¶ 62.] Therefore Doe's representation could conceivably constitute a "half-truth," since the list he allegedly provided contained *some*—though not all—of the names of the officers involved in Lacy's detention. Where, as here, "the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts," a duty may arise, *Crichton*, 576 F.3d at 398, as a "'half-truth' is sometimes more misleading than an outright lie," see *Abazari*, 2015 IL App (2d) 140952, ¶ 33.[5]

---

[5] Although Lacy did not specifically raise this argument with respect to duty, the Court nevertheless applies this point here because Lacy elsewhere argues the same general theory in his brief with respect to his duty to investigate [18.] Lacy argues that John Doe's conduct—handing him an incomplete list, lulled Lacy into a false sense of security such that he did no further digging. The false sense of security and the half-truth arguments are two sides of the same coin.

### 2. Prong 3: Reasonable Reliance

Defendants also argue that Lacy's fraudulent concealment claim fails the third prong—namely, that he could have discovered Officer John Doe's identity through a reasonable inquiry but did not. According to Defendants, Lacy has not plausibly alleged that he "could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist." [16 at 5–6] (quoting *Trs. Of the AFTRA Health Fund v. Biondi*, 303 F.3d 765, 777 (7th Cir. 2002)).

This argument comes closer to warranting dismissal but still falls short. Under Illinois law, a "plaintiff must allege either that he could not have discovered the truth through reasonable inquiry *or* that he was prevented from making reasonable inquiry." *Abazari*, 2015 IL App (2d) 140952, ¶ 36 (emphasis added). To be sure, "person may not enter into a transaction with his eyes closed to available information." *Zimmerman v. Northfield Real Estate, Inc.*, 510 N.E.2d 409, 416 (Ill. App. 1986). Nevertheless:

> a plaintiff's failure to investigate the reliability of the defendant's representations is not fatal where such inquiries are inhibited by statements creating a false sense of security. "Whether an injured party justifiably relied upon defendants' words or silence depends on the surrounding circumstances" and is a question of fact that is best left to the trier of fact

*Abazari*, 2015 IL App (2d) 140952, ¶ 37 (quoting *Zimmerman*, 510 N.E.2d at 416); *Sgariglia v. Am. Int'l Relocation Servs.*, LLC, 2021 WL 4226195, at *12 (N.D. Ill. Sept. 16, 2021) ("In determining whether the plaintiff's reliance on the defendant's representations was reasonable, "courts consider all of the circumstances, including 'the parties' relative knowledge of the facts available, opportunity to investigate the facts and prior business experience.'")

Here, Lacy has plausibly alleged that he was prevented from making a reasonable inquiry into the identity of the alleged wrongdoers. Just like in *Abazari*, Lacy "obviously discovered" the

missing information on the list "at some point," but "the complaint does not reveal when the plaintiff learned [of the missing information] or how difficult it was for him to obtain this information." 40 N.E.3d at 277. Not only did Lacy seek the information from the very people who allegedly mistreated him, but also it is plausible to assume that he did not have legal representation at that time, since he filed this federal lawsuit against the alleged wrongdoers *pro se* nearly a year later. Considering the parties' relative knowledge imbalance and the dynamics between a former pretrial detainee and the officer who detained him just hours earlier, it would be possible for a fact finder to conclude from John Doe and Lacy's exchange that John Doe's actions gave Lacy a "false sense of security" that the list was comprehensive. Accordingly, whether this sense of security was justifiable is a question best left to further factual development and ultimately either summary judgment or trial. See *Abazari*, 40 N.E.3d at 277.

        **B.**        **Dismissal of Officer John Doe – Count II and IV**

Defendants also contend that the §1983 claim against Officer John Doe as well as any potential fraudulent concealment claim are barred by applicable statutes of limitations. As stated above, a two-year statute of limitations applies to §1983 claims in Illinois. *Brooks*, 578 F.3d at 578. Additionally, a one-year statute of limitations governs supplemental state law claims against local entities and employees. *Davenport*, 545 F. App'x. at 538; *Tabet*, 2013 WL 1103695, at *3. While these limitations are affirmative defenses typically addressed after the pleading stage, it is well-established that if a "plaintiff's allegations show that there is an airtight defense * * * the judge may dismiss the suit on the pleadings." *Richards*, 969 F.3d at 637. There appears to be no dispute that Plaintiff's claims against Officer John Doe fall outside the applicable time limitations – he first named Officer John Doe on December 13, 2021, nearly two and a half years after the alleged cause of action.

11

To avoid being time barred, Plaintiff argues that the applicable statute of limitations should be tolled on the grounds of equitable tolling and equitable estoppel. The Seventh Circuit has explained the difference between these two fundamental tolling doctrines and discussed their application at length. See *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). Equitable tolling allows a plaintiff to avoid being time barred when "despite the exercise of all due diligence[,] he is unable to obtain vital information bearing on the existence of his claim." *Id*. Equitable estoppel, in contrast, prevents a Defendant from raising a statute of limitations defense if he took "active steps to prevent the plaintiff from suing in time," such as concealing evidence or a tortfeasor's identity from the plaintiff. *Id*; *Singletary v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 9 F.3d 1236, 1241 (7th Cir. 1993).

The Court will begin and end its inquiry with concluding that the Court cannot say, as a matter of law, that Lacy's Complaint expired because Lacy has sufficiently alleged that equitable estoppel applies as to the claims against Officer John Doe.

When federal courts apply a borrowed state statute of limitations, they should employ the federal version of equitable estoppel, rather than the state doctrine. *Shropshear*, 275 F.3d at 597. To prove equitable estoppel, a plaintiff must show that he was harmed by a defendant's deliberate conduct and that he filed suit promptly after the conduct that resulted in estoppel was removed. *Smith*, 951 F.2d at 840; *Ashafa v. City of Chicago*, 146 F.3d 459, 463–64 (7th Cir. 1998).

Unlike the doctrine of equitable tolling, federal equitable estoppel law lacks a "due diligence" requirement and only asks for a showing that Defendant took "active steps to prevent the plaintiff from suing in time." *Shropshear*, 275 F.3d at 597. Lacy's Complaint, read in the light most favorable to the plaintiff, satisfies this requirement. Lacy asserts that he detrimentally relied on the list of officers intentionally provided by Officer John Doe. This reliance, he argues, directly

caused him to fail to meet the statute of limitations requirement. Furthermore, nothing in the complaint suggests Lacy was aware of Officer John Doe's deception until after the statute of limitations expired. Compare *Rosado v. Gonzalez*, 832 F.3d 714 (7th Cir. 2016) (noting that plaintiff learned of fabrication seven months prior to the statute of limitations running). Therefore, it is not clear when the conduct causing the estoppel was removed.

For these reasons, the doctrine equitable tolling may apply to toll the statute of limitations, and the Court denies Defendants' motion to dismiss Officer John Doe on statute-of-limitations grounds.[6]

### C. Motion for Leave to Amend Complaint

That leaves one final matter: in Lacy's opposition to Defendants' motion to dismiss, Plaintiff requests leave to file an amended complaint substituting Lieutenant Daryl Fairley for the

---

[6] Failing that, even if Defendant is not estopped from asserting a statute of limitations defense, the Court cannot say that Lacy's claim is not tolled as a matter of law either. For assertions of equitable tolling, Illinois state tolling laws apply to both the §1983 borrowed statute of limitations and the Illinois Tort Immunity Act one-year limitation. See *Shropshear*, 275 F.3d at 596 (holding that "state, rather than the federal, doctrine of equitable tolling governs cases of borrowing.") In Illinois, "'[e]quitable tolling requires a showing of due diligence on the part of the plaintiff.'" *Richardson v. City of Chicago*, 314 F. Supp. 3d 999, 1011 (N.D. Ill. 2018) (*quoting Hart v. Loan Kieu Le*, 995 N.E.2d 1002, 1004 (Ill. App. 2013)). Such due diligence is a "'fact-specific inquiry, guided by reference to the hypothetical reasonable person.'" *Id*.

In this case, Lacy alleges he returned to the Maywood Police Department and took steps to ascertain the identify of the officers involved with his arrest and detainment. He was handed a list which he plausibly alleges he believed was accurate and all-inclusive, and reasonably relied. If indeed he believed John Doe gave him the information he needed, then he plausibly could have believed there were no further questions to ask.

Furthermore, Plaintiff initiated this lawsuit *pro se*. In such a scenario, where Plaintiff at least showed some effort to uncover the truth, a court must "take appropriate measures to permit the adjudication of pro se claims on the merits, rather than to order their dismissal on technical grounds." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *see also Bryant v. City of Chicago*, 746 F.3d 239 (7th Cir. 2014). *Cf. Walker v. Susnis*, No. 94 C 5352, 1995 WL 548739 (N.D. Ill. Sept. 13, 1995) (holding that equitable tolling does not apply because plaintiff's efforts to investigate were "not sufficient"). Given the facts alleged in the amended complaint, a "hypothetical reasonable person" may find Lacy exercised all proper due diligence expected of a *pro se* litigant and this issue should not be resolved on the pleadings.

unknown Officer John Doe. Generally, leave to amend a complaint should be freely given when justice so requires. See Fed. R. Civ. P. 15(a); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860–61 (7th Cir. 2001). A court should only deny such a request when there is "undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal*, 241 F.3d at 861. None of these factors exists in this case. Therefore, Plaintiff may file an amended complaint substituting Lt. Daryl Fairley as a party Defendant in lieu of the placeholder "John Doe."

**IV.     Conclusion**

For the reasons stated above, Defendants' motion to dismiss [16] is denied in full. Pursuant to Fed. R. Civ. P. 15(a), Plaintiff is granted leave to file an amended complaint substituting Lt. Daryl Fairley. Plaintiff is directed to file the amended complaint no later than September 26, 2022. The parties are directed to file a joint status report no later than October 12, 2022, setting out (a) a deadline by which Defendants will respond to the amended complaint; (b) a proposed discovery plan, and (c) a statement in regard to any settlement discussions and/or interest in a referral to the Magistrate Judge for a settlement conference.

Dated: September 2, 2022

                                                Robert M. Dow, Jr.
United States District Judge