IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LIDDELL LACY, ) | |
| ) | Case No. 21 CV 03081 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| VILLAGE OF MAYWOOD, MAYWOOD ) | |
| POLICE OFFICER SEAN EARLEY, ) | |
| MAYWOOD POLICE OFFICER DARYL ) | |
| FAIRLEY, and MAYWOOD POLICE ) | |
| OFFICER CARLOS PATTERSON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

*Pro se* Plaintiff Liddell Lacy brings this suit under 42 U.S.C. § 1983 and Illinois state law against the Village of Maywood and Maywood Police Officers Sean Earley ("Officer Earley"), Daryl Fairley ("Officer Fairley"), and Carlos Patterson ("Officer Patterson") (together, "Defendants") stating claims of excessive force, failure to provide medical care, and fraudulent concealment. Lacy alleges that while he was in the custody of the Maywood Police Department, Officer Earley used excessive force while handcuffing him, Officer Fairly ignored his requests for medical assistance when Lacy experienced vision problems, and Officer Patterson refused to transfer Lacy to a psychiatric ward despite a crisis worker's directions to do so. Lacy also alleges that in response to his request for identification of all officers whom Lacy had encountered while in custody from June 8, 2019 through June 14, 2019, Officer Fairley provided him with a handwritten list intentionally omitting his own name.

Before the Court is Defendants' motion for summary judgment. For the following reasons, the Court grants Defendants' motion [93].

1

I.  **BACKGROUND**

The following facts are undisputed. On June 8, 2019, the Maywood Police Department, including Officer Earley, responded to a report of domestic violence involving Lacy at Lacy's mother's home. (Dkt. 95 ¶¶ 10–12.) Lacy was arrested for domestic battery, transported to the Maywood Police Department, and placed in a holding cell alone. (*Id.* ¶¶ 14–15.) The cell had a toilet with a divider, which was attached to the ceiling by a pole, as well as a blanket. (*Id.* ¶ 16.) While in the holding cell, Lacy tied the blanket to the pole. (*Id.* ¶ 17.) Sergeant Michael Babicz ("Sergeant Babicz"), who was on duty at the time with Officer Earley, observed Lacy tying the blanket and believed Lacy was attempting to hang himself.[1] (*Id.* ¶¶ 18–19.) Officer Earley and Sergeant Babicz proceeded to the holding cell to respond to Lacy's apparent suicide attempt.[2] (*Id.* ¶¶ 21–24.) Officer Earley assisted Lacy in guiding his arms into a position to be handcuffed and placed handcuffs on him. (*Id.* ¶¶ 25, 28.) Lacy was compliant with all orders while he was being handcuffed and did not resist in any manner. (*Id.* ¶ 27.) Lacy alleges in his Second Amended Complaint ("SAC") that the manner in which Officer Earley handcuffed him injured his shoulder.

After being handcuffed, Lacy was removed from the holding cell and placed in an interview room. (*Id.* ¶ 38.) Lacy requested to go to the psychiatric ward, after which he was transported by ambulance to Westlake Hospital. (*Id.* ¶¶ 39–40.) On June 13, 2019, Lacy was released from Westlake Hospital and returned to Maywood Police Department headquarters. (*Id.* ¶ 42.) At some point that same day, Lacy began to complain to Officer Fairley that he was not feeling well and experiencing vision problems. (*Id.* ¶ 46.) In response to Lacy's complaints, Officer Fairley called for paramedics.

---

[1] Lacy does not properly admit or deny this statement of fact in accordance with Local Rule 56.1(e)(2). Accordingly, the Court deems the fact admitted. The Court admits all facts that are not properly disputed.

[2] Lacy disputes that Sergeant Babicz entered the holding cell, but fails to offer any supporting citation to the record. Instead, the citation Lacy offers supports Defendants' position that it is undisputed that Sergeant Babicz entered the cell to respond to Lacy's apparent attempt of self-harm. (*See, e.g.*, Dkt. 115 ¶¶ 22–25, 27.) Accordingly, the Court deems this fact admitted.

(*Id.* ¶ 49.) Lacy was found to be experiencing high blood pressure and was transported again to Westlake Hospital. (*Id.* ¶ 51.) Lacy alleges that once his blood pressure was stabilized, Officer Patterson refused a consulting crisis worker's direction to transfer Lacy to the psychiatric ward at Cermak Health Services of Cook County, and instead insisted that Lacy be returned to a holding cell at Maywood Police Department headquarters. (Dkt. 32 ¶¶ 36–37.)

Lacy filed his original complaint on June 8, 2021, alleging civil rights violations under 42 U.S.C. §§ 1983, 1985, and 1986 against the Village of Maywood, the Maywood Police Department, Officer Earley, Officer Patterson, and Sergeant Babicz arising out of events that occurred from June 8, 2019 through June 14, 2019. (Dkt. 1.) Lacy then filed a First Amended Complaint ("FAC") on December 23, 2021, removing the Maywood Police Department and Sergeant Babicz as named defendants and adding "Maywood Police Officer John Doe." (Dkt. 14.) In his SAC, filed on September 26, 2022, Lacy replaced Defendant Officer John Doe with Officer Fairley. (Dkt. 32.)

After more than one year of discovery, Defendants filed the instant motion for summary judgment and statement of material facts.[3]

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When determining whether a genuine issue of material fact exists, the Court must view all evidence and draw all reasonable inferences in favor of the

---

[3] The Court notes that Lacy filed a "corrected" amended complaint after Defendants filed the instant motion for summary judgment. Because Lacy did not seek or obtain leave of Court, or otherwise obtain consent from Defendants, to amend his complaint once again, the Court strikes the "corrected" amended complaint, (Dkt. 106), and disregards it for purposes of resolving the instant motion. *See* Fed. R. Civ. P. 15(a).

3

nonmoving party. *Id.* at 255; *Hackett v. City of South Bend,* 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (citation omitted).

### III. DISCUSSION

#### A. *Statute of Limitations*

Defendants argue that Lacy's claims against Officer Fairley for failure to provide medical care under 42 U.S.C. § 1983 and fraudulent concealment under state law are barred by the statute of limitations. Lacy brings Count II (Failure to Provide Medical Care) against Officer Fairley under 42 U.S.C. § 1983, which does not have an express statute of limitations. Instead, federal courts hearing claims under § 1983 adopt the forum state's statute of limitations for personal injury claims. *See Ross v. Illinois*, 48 Fed. Appx. 200, 201 (7th Cir. 2002). In Illinois, the statute of limitations for personal injury claims is two years. *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008). Thus, the statute of limitations for § 1983 claims is two years. Lacy also brings Count IV against Officer Fairley for fraudulent concealment, which is governed by the Illinois Tort Immunity Act's one-year statute of limitations. 745 ILCS 10/8-101; *see Davenport v. Dovgin*, 545 Fed. Appx. 535, 538 (7th Cir. 2013).

Federal law determines when a claim accrues, which is "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Behavioral Inst. of Indiana, LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005).

It is undisputed that the alleged conduct of which Lacy complains occurred between June 8, 2019 and June 14, 2019. Lacy's claims based on excessive force and failure to provide medical care began to accrue immediately; therefore, the statute of limitations for his § 1983 claims expired on June 14, 2021. Lacy initiated this action on June 8, 2021. In his initial complaint, Lacy made allegations about an unidentified "police on duty" who refused to take Lacy back to the hospital after he began to complain about feeling ill, but failed to name that officer as a defendant—either by identifying the

officer's name or badge number, or leaving in a placeholder (*e.g.*, Officer John Doe). Indeed, Lacy did not name an "Officer John Doe" as a defendant until December 23, 2021 in his FAC. Because Lacy's original complaint fails to give notice of any § 1983 claims against Officer Fairley before expiration of the two-year statute of limitations, Lacy's § 1983 claims against Officer Fairley are more than six months too late.

Lacy's fraudulent concealment claim against Officer Fairley has likewise expired. Although courts in this district have held that a "where a plaintiff initially names a fictitious defendant because the plaintiff does not know the defendant's true identity, a subsequent amended complaint can relate back to the initial complaint," *James v. City of Chicago*, 2018 WL 572710, at *3 (N.D. Ill. Jan. 25, 2018) (Ellis, J.), Lacy's initial complaint makes clear that he was or should have been aware that the list of "officer[s] involved" did not name all of the officers with whom he had interacted while in custody from June 8, 2019 through June 14, 2019. His claim, then, began to accrue on June 14, 2019, and his fraudulent concealment claim against Officer Fairley in the FAC filed on December 23, 2021 was a year and a half too late.

Additionally, nothing in the record warrants a finding of equitable estoppel, which "suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing, as by promising the plaintiff not to plead the statute of limitations pending settlement talks or by concealing evidence from the plaintiff that he needed in order to determine that he had a claim." *Singletary v. Continental Ill. Nat'l Bank & Trust Co.*, 9 F.3d 1236, 1241 (7th Cir. 1993). It is undisputed that Plaintiff never asked Officer Fairley for his name during their interaction shortly before being released from custody, (Dkt. 95 ¶ 72), Officer Fairley never refused to give information to Lacy that Lacy had requested from him (*id.* ¶ 73), Officer Fairley never tried to hide his nametag or badge from Lacy, (*id.* ¶ 74), and Lacy did not, any time following the events of June 8, 2019 to June 14, 2019, make an oral or written request to obtain information about, or

5

investigate into, the identities of the officers with whom he interacted while in custody. (*Id.* ¶ 75.) There are no facts in the record indicating that Officer Fairley deliberately concealed evidence, including his own name, from Lacy, such that it caused delay in Lacy's naming of Officer Fairley (or, at the very least, "Officer John Doe") as a defendant. As such, the statute of limitations bars Lacy's claims against Officer Fairley, and the Court grants summary judgment in favor of Officer Fairley.

### B. *Excessive Force*

Defendants Village of Maywood and Officer Early assert that they are entitled to summary judgment on Lacy's claim based on alleged use of excessive force because Lacy can demonstrate neither that any force was used against him, nor that Officer Earley's actions were objectively unreasonable as a matter of law. Courts evaluate excessive force claims under an objective reasonableness standard, namely, "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). The Court's inquiry should consider "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Lombardo v. City of St. Louis*, 594 U.S. 464, 467 (2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

The Court need not assess whether Officer Early's conduct was reasonable because the record is devoid of any fact identifying what specific action of Officer Early's constituted force. In response to deposition questioning on this issue, Lacy described the manner in which he was handcuffed as "forceful," "aggressive," and "rough," but did not point to any particular action supporting his allegation that Officer Early "intentionally injured [his] shoulder" while placing him in handcuffs. (Dkt. 95 ¶ 29; Dkt. 115 ¶ 30.) *See also* Dkt. 95 ¶ 31 ("[Officer Earley] was behind me, and I don't

actually recall [what caused the injury] in that I'm not watching what he was doing."). There is no dispute that Officer Early did not yank Lacy's arms in any direction or push, strike, or use other similar force toward Lacy while handcuffing him, or at any other time. (*Id.* ¶ 32.) Because there is no genuine dispute of material fact as to whether Lacy was subject to force, the Court grants summary judgment in favor of Defendants Village of Maywood and Officer Early on Lacy's excessive force claim.

### C. § 1983 Claim for Failure to Provide Medical Care

Defendants contend that there are no facts in the record to support Lacy's claim that Officer Patterson failed to provide medical care by refusing to transfer Lacy to a psychiatric ward despite a crisis worker's directions to do so. The record indicates that on June 13, 2019, Officer Patterson was not at Westlake Hospital with Lacy, did not escort Lacy to or from Westlake Hospital or any other medical facility, did not speak with any medical professional or crisis worker at Westlake Hospital regarding Lacy, and was not directed by anyone to transport Lacy to Cermak Psychiatric Ward. (*Id.* ¶ 54–56; Dkt. 94, Ex. 12 ¶¶ 3–6.) These facts are not in dispute. Instead, Lacy, in his response to Defendants' statement of material facts, states that "[Lieutenant] Dent would have been the only R/O to transport Mr. Lacy on this date and time of June 13, 2019," and "[t]herefore, Lt. Dent of the MWPD would be the only officer who could have taken directions from the crisis worker to take [Lacy] to Cermak Psychiatric." (Dkt. 115 ¶ 56.) There being no evidence indicating that Officer Patterson refused to transport or transfer Lacy to a psychiatric ward, the Court grants Defendants' motion for summary judgment on this count.

### IV. CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment [93].

**IT IS SO ORDERED.**

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: 6/6/2025